## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CRAIG PETERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-2727-JAR-TJJ |
| | ) | |
| BROOKDALE SENIOR LIVING | ) | |
| COMMUNITIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

## NOTICE

Within fourteen (14) days after being served with a copy of this Report and

Recommendation, any party, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2),

may file written objections to this Report and Recommendation.  A party must file any

objections within the fourteen-day period if that party wants to have appellate review of the

proposed findings of fact, conclusions of law, or recommended disposition.  If no objections

are timely filed, no appellate review will be allowed by any court.

### Nature of the Matter Before the Court

Defendant has filed a Motion to Dismiss or, in the Alternative, to Stay Proceedings and

Compel Arbitration (ECF No. 4), asserting Plaintiff signed a Dispute Resolution Agreement in

which he agreed to arbitrate claims for termination and retaliation which could arise out of his

employment with Brookdale Employee Services LLC.  Plaintiff opposes the motion, arguing

he lacks the mental capacity to enter into a contract, and that the agreement is unconscionable.

Plaintiff does not deny having signed the agreement.

**Background**

      Plaintiff was employed by Brookdale Employee Services LLC from February 2018 until October 2018.[1] On February 20, 2018, Plaintiff signed the "Brookdale Dispute Resolution Agreement" ("the Agreement") as a condition of his employment.[2] The document recites an agreement by Plaintiff and Brookdale[3] that they would arbitrate all disputes arising out of or related to Plaintiff's employment not specifically excluded,[4] including claims for termination, discrimination, and retaliation, among other claims. The document also states that both Plaintiff and Brookdale understand and agree that the arbitration agreement is covered by the Federal Arbitration Act, and that it is a matter involving commerce.[5]

      Plaintiff filed this action in the District Court of Johnson County, Kansas.[6] In his Petition, Plaintiff alleges Brookdale terminated his employment in retaliation for making a

---

[1] Plaintiff's Petition (ECF No. 1-1) at 3-4.

[2] The Agreement includes the following language: "I understand and agree that consenting to this Agreement is a condition of my employment with Brookdale." ECF No. 5-1 at 6.

[3] Brookdale is identified in the agreement as "Brookdale Senior Living Inc. or one of its affiliates or subsidiaries." *Id.* at 5. Defendant has submitted the affidavit of Jaclyn Pritchett, Vice President, Human Resources Field Operations for Brookdale Senior Living Inc., which states that Brookdale Employee Services LLC is a wholly-owned subsidiary of Brookdale Senior Living Communities, Inc., which is a wholly-owned subsidiary of Brookdale Senior Living Inc. Pritchett Aff., ECF No. 5-1 at 2. While Plaintiff's Petition identifies his former employer as Brookdale Senior Living Communities, Inc., he does not dispute Defendant's claim that Brookdale Employee Services LLC is the proper entity.

[4] Excluded matters are claims for workers compensation, state disability insurance, or unemployment insurance benefits. ECF No. 5-1 at 5.

[5] 9 U.S.C. §§ 1-16.

[6] ECF No. 1-1.

workers compensation claim, and that Brookdale's stated reasons for the termination were false and pretextual. Brookdale removed the action to this court.

## Legal Standard

While the interpretation of contracts is generally a matter of state law, the Federal Arbitration Act ("FAA") imposes certain rules beyond those normally found in state contract law.[7] The FAA applies to written arbitration agreements in any contract "evidencing a transaction involving commerce."[8] The FAA authorizes a federal district court to compel arbitration when the court would have jurisdiction over a suit on the underlying dispute, and obligates the court to stay litigation on matters the parties have agreed to arbitrate.[9] Congress designed the FAA to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate" and by enacting the FAA, created "a liberal federal policy favoring arbitration agreements."[10] Despite its liberal policy, the FAA "does not require parties to arbitrate when they have not agreed to do so."[11] Rather, courts must enforce agreements to arbitrate, like other contracts, in accordance with their terms.[12] Under the FAA, a court should compel

---

[7] *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (internal citations omitted).

[8] 9 U.S.C. § 2.

[9] *See* 9 U.S.C. §§ 4, 3.

[10] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

[11] *Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 478 (1989).

[12] *Id.*

arbitration if it finds that (1) a valid arbitration agreement exists between the parties; and (2) the dispute before it falls within the scope of the agreement.[13]

A presumption of arbitrability arises if a contract contains an arbitration clause, particularly if the language in question is "broad and sweeping."[14] Any doubt concerning arbitrability of a dispute should be resolved in favor of arbitration.[15] Whether a party agreed to arbitration is a contract issue, which means that arbitration clauses are valid only if the parties intended to arbitrate.[16] Courts apply state-law principles in deciding whether parties agreed to arbitrate.[17]

The presumption of arbitrability disappears when a dispute arises over the existence of a valid arbitration agreement.[18] In that instance, the party moving to compel arbitration has the burden to present sufficient evidence to demonstrate the existence of an enforceable agreement. If met, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement.[19] If a genuine dispute of material fact exists, the FAA

---

[13] *Funderburke v. Midland Funding, L.L.C.,* 12-2221-JAR/DJW, 2013 WL 394198, at *2 (D. Kan. Feb. 1, 2013).

[14] *ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995).

[15] *LDS, Inc. v. Metro Can. Logistics, Inc.,* 28 F. Supp. 2d 1297, 1299 (D. Kan. 1998).

[16] *Ragab v. Howard*, 841 F.3d 1134, 1137 (10th Cir. 2016) (citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

[17] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

[18] *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998).

[19] *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012).

directs the court to conduct a summary trial.[20] Only "when it's clear no material disputes of fact exist and only legal questions remain" may a court resolve the arbitration issue by ruling on a motion to compel arbitration, rather than conducting a summary trial.[21]

## Analysis

Plaintiff raises two arguments against the binding nature of the Agreement.

### Plaintiff's Lack of Capacity

The Court turns first to Plaintiff's contention that the arbitration agreement is unenforceable because he lacks mental capacity to contract. Plaintiff's Petition states that he is "learning disabled/special needs with IQ of a 14-year-old and has been diagnosed with attention deficit disorder."[22] In response to the motion to compel and citing his Petition as support, Plaintiff repeats that he is learning disabled/special needs with the IQ level of a 14-year-old.[23] Referring to these conclusory statements as "evidence," Plaintiff makes the following additional unsupported assertions:

> Additionally, Peterson: (1) would have no practical understanding of any employment documents he would have signed at the outset of his employment with Brookdale; (2) would have no real understanding of what the word arbitration means or the practical effect of any arbitration agreement he signed at the outset of his employment with Brookdale; (3) has neither the mental capacity to understand the information given to him at the outset of his employment related to any arbitration agreement, nor does he have the mental capacity to be able to retain the information long enough

---

[20] 9 U.S.C. § 4; *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 984 (10th Cir. 2014).

[21] *Id.*

[22] ECF No. 1-1 at 3.

[23] ECF No. 9 at 1.

to be able to communicate in a way to be able to make an informed decision about the arbitration agreement.[24]

Peterson contends that, taken together, these assertions create a genuine issue of material fact regarding the formation of a contract. However, Plaintiff does not seek a summary trial on the issue as the FAA directs. Instead, he posits that as a matter of law, Defendant is not entitled to arbitration.[25]

In reply, Defendant correctly states that Kansas courts apply a legal presumption that an adult is fully competent to enter into a contract until satisfactory proof to the contrary is presented. To overcome the presumption, Plaintiff has the burden to show that he lacks such mental competence.[26] The issue of mental competence often arises in cases involving a person's testamentary capacity, and it is from this body of law that Defendant finds support for asserting that Plaintiff's burden of proof to demonstrate he lacks capacity is clear and convincing.[27]

Defendant concurs with Plaintiff that the applicable standard requires Defendant to present evidence demonstrating the existence of an enforceable arbitration agreement, and upon doing so the burden shifts to Plaintiff to submit evidence showing a genuine issue of

---

[24] *Id.* at 6.

[25] *Id.*

[26] *E.g., Estate of Hendrickson*, 805 P.2d 20, 24-25 (Kan. 1991); *Scott v. Farrow*, 391 P.2d 47, 52 (Kan. 1964); *Matter of Estate of Moore*, 390 P.2d 551, 565 (Kan. App. 2017).

[27] *In re Estate of Farr*, 49 P.3d 415, 426 (Kan. 2002).

material fact on whether an agreement was made.[28] However, Plaintiff offers no evidence in support of his claimed lack of capacity. Following Defendant's reply, Plaintiff filed a Motion for Leave to File Sur-Reply,[29] which seeks to file an affidavit from Plaintiff's father attesting to Plaintiff's lack of mental capacity. Defendant opposes the motion or alternatively requests leave to respond.[30]

Neither the Federal Rules of Civil Procedure nor this court's local rules contemplate the filing of a sur-reply. A party must have leave to file a sur-reply, and our courts typically grant leave only where a movant improperly raises new arguments in a reply.[31] Here, Defendant raised no new argument but merely pointed out Plaintiff's failure to submit evidence to support his assertion of mental incapacity. Plaintiff seeks to address that deficit with an affidavit from his father.

The undersigned Magistrate Judge will recommend that District Judge Robinson grant Plaintiff leave to file his sur-reply and consider the affidavit in the interests of justice. The affiant, Michael M. Peterson, identifies himself as Plaintiff's father, and states the following:

> Craig Peterson is learning disabled/special needs with an approximate IQ level of approximately 14 year-old;
>
> Craig Peterson has no real practical understanding of any employment documents he may have signed at the outset of his employment with Brookdale Rosehill;

---

[28] *E.g., Rangel v. Hallmark Cards, Inc.*, No. 10-4003-SAC, 2010 WL 781722, at *4 (D. Kan. Mar. 4, 2010).

[29] ECF No. 12.

[30] ECF No. 16.

[31] *Smith v. Phamm*, 03-3451-SAC, 2008 WL 2474596, at *4 (D. Kan. June 17, 2008) (internal citations omitted).

> Craig Peterson had no real understanding of what the word "arbitration" means or the effect of any arbitration agreement he allegedly signed at the outset of his employment with Brookdale Rosehill;
>
> Craig Peterson did not have the mental capacity to understand the information given to him at the outset of his employment related to any arbitration agreement. Likewise, he did not have the mental capacity to retain the information long enough to communicate it and make an informed decision about the arbitration agreement.[32]

Mr. Peterson provides no written professional assessment or other evidence which would show Plaintiff's incapacity to understand the terms of the Agreement. The affidavit contains nothing but conclusory statements. While the Court respects that as a father Mr. Peterson is very familiar with his son's limitations, his opinion does not suffice as objective reliable evidence that Plaintiff lacks the mental capacity to enter into a contract.

"A person lacks the capacity to enter into a contract if he or she hasn't the mental wherewithal 'to understand in a reasonable manner the nature and effect' of the agreement."[33] Judge Lungstrum has considered whether an affidavit is sufficient to create a genuine dispute on the issue of a party's mental capacity to enter into a contract. In *DeClue v. General Motors Corporation*, No. 99-2299-JWL, 2000 WL 1472856 (D. Kan. Aug. 22, 2000). After reviewing orders from several other federal and state courts, Judge Lungstrum concluded that a claim of lack of capacity is insufficient absent "competent medical evidence . . . from which a factfinder could conclude that plaintiff . . . did in fact lack the mental capacity to enter into the

---

[32] ECF No. 12-1 at 5.

[33] *Moore v. Moore*, 429 P.3d 607, 620 (Kan. App. 2018) (quoting *DeBauge Bros., Inc. v. Whitsitt*, 212 Kan. 758, 762, 512 P.2d 487 (1973)).

agreement."[34] The undersigned Magistrate Judge agrees with Judge Lungstrum's analysis and finds that Plaintiff has not created a genuine dispute on the issue of his capacity to enter into the Agreement. Thus, whether Plaintiff's burden of proof is clear and convincing evidence or the lower preponderance of the evidence, he meets neither because he offers no competent medical evidence.

**Unconscionability**

Plaintiff argues he should be relieved of the requirement to arbitrate because the Agreement is unconscionable. Plaintiff asserts that, because by its terms (1) the Agreement would have been effective even if Plaintiff had not signed it, and (2) the Agreement was a condition of his employment, it was unconscionable. Plaintiff offers no legal support for his argument.

The Court rejects Plaintiff's argument. Plaintiff admittedly signed the agreement, thereby rendering moot consideration of what effect a lack of signature might have. In addition, the Agreement clearly states that it was a condition of Plaintiff's employment. "In Kansas, a contracting party is under the duty to learn the contents of a written contract before signing it. As a result of this duty, a person who signs a written contract is bound by its terms regardless of his or her failure to read and understand its terms. This principle applies to arbitration agreements."[35] Plaintiff also complains that Defendant was the stronger party in the agreement.

---

[34] *DeClue*, 2000 WL 1472856, at *3.

[35] *Felling v. Hobby Lobby, Inc.*, No. 04-cv-2374-GTV, 2005 WL 928641, at *4 (D. Kan. Apr. 19, 2005) (internal *quotations* and citations omitted).

"Mere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context."[36]

The Court finds that the Agreement was not unconscionable.

The Court concludes that a valid arbitration agreement exists and Plaintiff's claims fall within its scope. Accordingly, the Court recommends that this action be stayed while Plaintiff's claims are submitted to arbitration.

<u>**RECOMMENDATION**</u>

**IT IS THEREFORE RECOMMENDED THAT** Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Arbitration (ECF No. 4) be granted, and that this matter should be stayed pending arbitration.

**IT IS FURTHER RECOMMENDED THAT** Plaintiff's Motion for Leave to File Sur-Reply (ECF No. 12) be granted, and that Plaintiff be ordered to file his Sur-Reply within five days of the date of the order.

Respectfully submitted.

Dated in Kansas City, Kansas, on this 30th day of March, 2020.

Teresa J. James
U. S. Magistrate Judge

---

[36] *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991).